James A. Francis
John Soumilas
Lauren KW Brennan
FRANCIS & MAILMAN, P.C.
1600 Market Street, 25th Floor
Philadelphia, PA 19103
T: (215) 735-8600
F: (215) 980-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
lbrennan@consumerlawfirm.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEVIN JOSEPH KELLY and KARRIEM BEY, on behalf of themselves and all others similarly situated, | |
| *Plaintiffs*, | Civil Matter No. _____ |
| v. | **CLASS ACTION COMPLAINT** |
| REALPAGE, INC., d/b/a On-Site and | **TRIAL BY JURY DEMANDED** |
| RP ONSITE, LLC. | |
| *Defendants*. | |

Plaintiffs KEVIN JOSEPH KELLY and KARRIEM BEY, on behalf of themselves and all others similarly situated, and complaining of Defendants REALPAGE, INC., d/b/a On-Site and RP ONSITE, LLC, respectfully allege as follows:

## I.    PRELIMINARY STATEMENT

1.    This is a consumer class action brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x ("FCRA") by Plaintiffs seeking relief for Defendants' widespread violations thereof for themselves and all others similarly situated.  Defendants systematically

violate FCRA section 1681g(a) by failing to provide complete and accurate disclosures of all information Defendants maintain about consumers to those consumers upon request.

2.      Defendants' practices harm consumers seeking residential leases by depriving them of valuable congressionally-mandated information which would assist them in correcting inaccurate information, and harm interstate commerce as a whole.

## II.      JURISDICTION *and* VENUE

3.      Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. §1331.

4.      Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

## III.      PARTIES

5.      Plaintiff Kevin Joseph Kelly is an adult individual who resides in Philadelphia, Pennsylvania. At all times pertinent hereto, Plaintiff Kelly was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

6.      Plaintiff Karriem Bey is an adult individual who resides in Spring Valley, California.  At all times pertinent hereto, Plaintiff Bey was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

7.      Defendant RealPage, Inc. is a consumer reporting agency that regularly conducts business in the Commonwealth of Pennsylvania in its own name and as "On-Site." Defendant RealPage, Inc. maintains a principal place of business at 4000 International Parkway, Carrolton, Texas.

8.      Defendant RP Onsite, LLC is a consumer reporting agency that regularly conducts business in the Commonwealth of Pennsylvania.  Defendant RP Onsite maintains a principle place of business in Campbell, California.

9.      Defendant RP Onsite, LLC is a wholly-owned subsidiary of Defendant RealPage,

Inc., and was created after RealPage, Inc. acquired On-Site Manager, LLC in September 2017.[1]

10.     At all times pertinent hereto, Defendants were each "persons" and a "consumer reporting agencies" ("CRAs") within the meaning of 15 U.S.C. §§ 1681a(b) and (f), respectively.

## IV.     FACTUAL ALLEGATIONS

*RealPage's History of Failing to Properly Disclose Information to Consumers*

11.     Defendants are regulated by the FCRA, and sell consumer reports (commonly called "credit reports") about thousands of consumers. Defendants regularly sell consumer reports for residential screening purposes.

12.     Among other things, the FCRA regulates the collection, maintenance, and disclosure of consumer credit report information by CRAs, including public record information.

13.     Defendants obtain distilled and incomplete public record information, including criminal record history and public record of residential evictions, from private business that they call "vendors," and maintain such data in consumer files that they create and assemble.

14.     Defendants sell such consumer files to landlords wishing to investigate the background of consumers applying for residential leases.

15.     Defendants are required to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.  15 U.S.C. § 1681e(b).

16.     Further, the FCRA unambiguously requires CRAs such as Defendant to clearly and accurately disclose to consumers all information that the CRA maintains about them, including the sources that supplied the information.  15 U.S.C. § 1681g(a); *Cortez v. Trans Union, LLC,* 617

---

[1] https://www.realpage.com/news/realpage-closes-acquisition-onsite/ (last visited March 28, 2019).

F.3d 688, 711-12 (3d Cir. 2010); *Dennis v. Trans Union, LLC*, 2014 WL 5325231 (E.D. Pa. Oct. 20, 2014).

17.     RealPage, Inc's practices for disclosing consumer information have previously been the subject of an FCRA class action, asserting that RealPage, Inc. failed to disclose to consumers the sources its of public record information.  *Stokes v. RealPage, Inc.*, No. 2:15-cv-01520 (E.D. Pa.).

18.     The *Stokes v. RealPage, Inc.* case was filed on March 25, 2015, asserting that RealPage, Inc., routinely failed to disclose the sources of criminal record information included in consumer files to those consumers upon request, and that it regularly reported criminal record information which had been expunged, sealed, or otherwise removed from the public record.  No. 2:15-cv-01520 (E.D. Pa.) at Dkt. No. 1.

19.     The *Stokes* litigation resulted in a class-wide settlement which included a provision requiring RealPage, Inc. to disclose its public records vendor(s) to consumers.  No. 2:15-cv-01520 (E.D. Pa.) at Dkt. No. 51-2 (Settlement Agreement at § 6.3.1).  The settlement was granted preliminary approval on August 3, 2017 (*Id.* at Dkt. No. 55), and finally approved on February 6, 2018.  *Id.* at Dkt. No. 63.

*Acquisition of On-Site Manager LLC And Continuing Violations of the FCRA*

20.     On September 27, 2017, Defendant RealPage, Inc. announced that it had acquired one of its competitors in the tenant screening market, On-Site Manager, LLC ("OnSite").[2]

21.     Upon information and belief, Defendant RealPage, Inc. continues to operate under the name "OnSite" through its wholly-owned subsidiary, Defendant RP Onsite, LLC.

---

[2] https://www.realpage.com/news/realpage-closes-acquisition-onsite/ (last visited March 28, 2019).

22.     Defendant RealPage, Inc. continues to primarily obtain the public record information it places on reports from private vendors, and not from courthouses or government offices.

23.     Likewise, Defendant RP Onsite, LLC primarily obtains the public record information it places on reports from private vendors, and not from courthouses or government offices.

24.     The public records information that Defendants receive from its vendors are not the actual court records.  Rather, these are distilled versions of those records, which do not include all of the information available at the actual courthouses or government offices where the true records are housed.

25.     These distilled records frequently have numerical and other factual errors, do not have the most updated status of the public records, and/or are associated with the wrong consumer's report.

26.     Defendants are aware that public records vendors, including its own vendors, make mistakes in the distilled public records that they acquire for the purpose of selling on consumer reports.

27.     Disclosure of the true source of a CRA's information is vital so that certain errors that originate at the source can be corrected, and so that consumers always know who is disseminating important information about them.

28.     Despite the plain language of FCRA section 1681g(a)(2), the available court guidance, and the requirements of the *Stokes* settlement, Defendants continue to, as a matter of common policy and procedure, fail to provide consumers who request a copy of their consumer file with all information Defendants maintain about the requesting consumer, including failing to

disclose the third party vendor sources of public record information Defendants collect and report about them.

29.    Defendants furthermore fail to follow reasonable procedures designed to assure maximum possible accuracy of their consumer reports, as required by FCRA section 1681e(b).

30.    Defendants' standard practice is to use only partial matching and not full personal identifying information in preparing consumer reports.

31.    Defendants employ policies and procedures that do not include the use of a reasonable number of personal identifiers, or account for middle names even when available on the public record, and that frequently allow the information belonging to one consumer to appear in the consumer file of another.

32.    Defendants furthermore fail, as a matter of common policy and procedure, to follow procedures to avoid the reporting of public record information that has been expunged, sealed, or otherwise removed from the public record.

33.    Defendants' practices for obtaining and reporting public record information, and disclosing such information and its sources to consumers, is not accidental, nor a result of simple negligence, but instead a result of deliberately designed policies and procedures.

*The Experience of Plaintiff Kevin Joseph Kelly*

34.    In late October and early November 2018, Plaintiff Kevin Joseph Kelly sought an apartment in Center City Philadelphia, to live closer to family and ease his recovery from a hip replacement scheduled for November 7, 2018.

35.    He applied to rent an apartment at The St. James, at 200 West Washington Square, on November 3, 2018.

36.    On or about November 5, 2018, The St. James ordered a consumer tenant screening

report about Plaintiff Kelly from Defendants, after obtaining his full name, address, social security number, and date of birth, which Plaintiff Kelly provided as part of his application, and which The St. James transmitted to Defendants in seeking a report about Plaintiff Kelly.

37.     Defendants sold The St. James a consumer report purportedly about Plaintiff Kelly that same day for a fee.  The report stated that its subject was "Kevin J. Kelly."

38.     Despite having been provided with Plaintiff Kelly's full name, address, social security number and date of birth, Defendants did not use all of those personal identifiers in determining whether Plaintiff Kelly had any public record history.

39.     The consumer report Defendants sold to The St. James about Plaintiff Kelly inaccurately stated that he had two DUI convictions, from 1998 and 2004, despite the fact that the publicly available records make clear that the DUIs pertain to a "Kevin Richard Kelly."  These DUIs belong to an unrelated person, and Plaintiff Kelly does not have any DUIs.

40.     This mixing of the files was a result of Defendants' use of imprecise name matching procedure to match public records to apartment rental applicants, such as Plaintiff Kelly.

41.     Furthermore, the report misstated the case number for each DUI.  The RealPage report inaccurately states that the case number for the 1998 DUI is "CR-0000202-98" despite the fact that the public record shows the case number as "CP-45-CR-0005171-1998."  The RealPage report inaccurately states that the case number for the 2004 DUI is "CR-0000018-05" despite the fact that the public record shows the case number as "CP-46-CR-0001955-2005.

42.     In addition to the two misattributed DUIs, the November 5, 2018 report also included a record of an outdated vehicle inspection tag (called "refuse inspection").  *See* 75 Pa. C.S.A. § 4701 ("No owner or driver shall refuse to submit a vehicle… to an inspection and test that is authorized or required by the provisions of this chapter.").

43.     The report inaccurately stated that the "refuse inspection" record was a conviction for a misdemeanor, when in reality the record was a non-criminal summary offense processed in traffic court.   The proper grade of summary offense is clearly stated on the public record related to the incident.

44.     The proper grade of summary offense is clear on the face of the report, based upon the case number of "MJ-38123-TR-0003532-2016."

45.     The Unified Judicial System of Pennsylvania uses conventions for case numbers and codes which identify the court in which the case was tried and the nature of the case, in the format "XX-00-XX-0000000-0000."   The code for a case tried in the Magisterial District Courts of Pennsylvania is "MJ," while the code for a case in a Court of Common Pleas is "CP."

46.     Felony and misdemeanor cases are identified in a separate portion of the case number as "CR."   In contrast, if a case relates solely to a summary offense, the same portion of the case number will bear the code "SU."   If a case relates solely to a traffic offense, the same portion of the case number will bear the code "TR."

47.     Thus, a misdemeanor criminal case brought in a Court of Common Please would bear a case number such as CP-51-CR-1234567-2019.

48.     In contrast, a case consisting solely of a traffic offense brought in the Magisterial District Court could bear a case number such as MJ-51-TR-1234567-2019.

49.     Despite the existence of multiple clear and systematic indications of the grade of summary offenses, including traffic violations, in Pennsylvania, Defendants failed to differentiate between a traffic offense, and a more serious charge of a misdemeanor

50.     The St. James notified Plaintiff Kelly on November 5, 2018 that his rental application was denied based upon the RealPage/OnSite report.

51.     Plaintiff Kelly made a request for information to Defendants, and in response received a copy of his RealPage file.  The file Defendants provided did not identify their third party vendor source for the criminal records attributed to Plaintiff Kelly.

52.     Plaintiff Kelly disputed each of the inaccurate items of information directly with Defendants.

53.     Plaintiff Kelly first disputed Defendants' inaccurate reporting over the phone, on or about November 6, 2018.

54.     Plaintiff Kelly also submitted disputes including documentation through Defendants' online dispute system, on or about November 6, 2018.

55.     Defendants refused to correct any of the disputed information.

56.     Defendants refused to remove the inaccurate DUI records in part because the case numbers on the underlying records Plaintiff Kelly referenced in its disputes did not match the incorrect case numbers Defendants included on its report.  Defendants instead demanded that Plaintiff Kelly provide a letter from the court stating that Plaintiff Kelly did not commit the crimes Defendants improperly attributed to him.

57.     Defendants did not correct its inaccurate reporting of the grade of the "refuse inspection" record.

58.     As a result of Defendants' conduct, Plaintiff has suffered damages in the form of denial of a rental opportunity, harm to reputation, denial of valuable statutorily-mandated disclosure of information, time spent resolving the problem, and emotional distress.

59.     At all times pertinent hereto, Defendant's conduct was a result of its deliberate policies and practices, was willful, and carried out in reckless disregard for consumers' rights as set forth under sections 1681e(b) and 1681g(a) of the FCRA, and further assumed an unjustifiably

high risk of harm.

*The Experience of Plaintiff Karriem Bey*

60.     On or about November 28, 2018, Plaintiff Karriem Bey sought an apartment in La Mesa, California. Plaintiff Bey sought to downsize into a more affordable apartment with his family.

61.     He applied to rent an apartment at Woodbridge, 10874 Calle Verde, La Mesa, CA 91941.

62.     On or about November 28, 2018, Woodbridge ordered a consumer tenant screening report about Plaintiff Bey from Defendants, after obtaining his full name, address, social security number, and date of birth, which Plaintiff Bey provided as part of his application, and which Woodbridge transmitted to Defendants in seeking a report about Plaintiff Bey.

63.     Defendants sold Woodbridge a consumer report purportedly about Plaintiff Bey that same day for a fee.  The report stated that the Rental Report was prepared for "Karriem Bey."

64.     Despite having been provided with Plaintiff Bey's full name, address, social security number and date of birth, Defendants did not use all of those personal identifiers in determining whether Plaintiff Bey had any public record history.

65.     The consumer report Defendants sold to Woodbridge about Plaintiff Bey inaccurately stated that a Civil Action for Possession was filed against him in Cook County, Illinois.  It indicated that the date of this eviction filing was June, 2014 and provided a Case Number: 14M1712597.  The report also reported the address which was the subject of the Action in Oak Park, Illinois.

66.     This Civil Action for Possession was not against Plaintiff Bey.  Plaintiff Bey had never lived in Oak Park, Illinois.

67.     The Civil Action for Possession belonged to another individual with the same first and last name, but a different date of birth and social security number.

68.     Plaintiff Bey was never evicted from any property, nor was a Civil Action for Possession ever filed against him.

69.     This mixing of the files was a result of Defendants' use of an imprecise matching procedure to match public records to apartment rental applicants, such as Plaintiff Bey.

70.     Furthermore, the Civil Action for Possession which was filed in Cook County, Illinois was sealed and impounded, and access to the records is only available by motion to the Clerk by a party of the suit.

71.     Information regarding the judge, outcome, reason for impoundment or docket information is not available by access to the court computer terminal, or by phone call to the Clerk's office.

72.     Plaintiff Bey was notified that his rental application was denied based upon the RealPage/On-Site report on or about November 2018.

73.     When Plaintiff Bey was informed in November of 2018 that he was rejected as a tenant based on information in his tenant screening report, he reviewed his report and discovered the Civil Action for Possession was erroneously appearing on his file.

74.     The file Defendants provided did not identify their third party vendor source for the public records attributed to Plaintiff Bey.

75.     Plaintiff Bey contacted Defendants and was told to dispute the erroneous information on-line.

76.     Plaintiff Bey disputed the information on his report on November 28, 2018 using the Defendants' on-line dispute process.  He informed Defendants that he was not the defendant

in the Civil Action for Possession.

77.     Defendants verified the erroneous eviction record and the record remained on Plaintiff Bey's file.

78.     On or about December 7, 2018, Plaintiff Bey again disputed the information relating to the Civil Action for Possession.  In his dispute he indicated that he was not the person that the eviction action was filed against.

79.     Plaintiff Bey attached to his December 7, 2018, dispute a letter from the Oak Park, Illinois property manager which stated that Plaintiff Bey had never resided at the Oak Park City Apartments, and that Plaintiff Bey's information did not match the evicted resident's information.

80.     Plaintiff Bey also attached copies of his driver's license and social security card, as well as a letter from the San Diego County Department of Housing and Community Development, from May 29, 2014 which indicated Plaintiff Bey was receiving rental assistance in San Diego County.

81.     Plaintiff Bey demanded removal of the erroneous public record.

82.     Defendants nevertheless "verified" the information on his report and refused to delete the Civil Action for Possession.

83.     During this time, Plaintiff Bey also contacted the Clerk of the Court of Cook County to obtain information regarding the eviction, and was told that there was no information available because the matter was sealed.

84.     On December 21, 2018, Plaintiff Bey again disputed, via certified mail, the erroneous eviction on his rental screening report.

85.     In his dispute, he explained that he had never lived at the Oak Park, Illinois property, that the records of this eviction were sealed, and because he was a military veteran, he

had been participating in the Veteran's Administration Supportive Housing Rental Assistance Program in California.

86.     Plaintiff Bey attached to his dispute a copy of the Oak Park, Illinois property manager's letter confirming that he was not evicted from the property, a letter from the County of San Diego Health and Human Services Agency verifying his rental assistance in San Diego, and a copy of his identification records.

87.     Once again, Defendants "verified" the eviction and it remained in Plaintiff Bey's file.

88.     On or about February, 2019, Plaintiff Bey disputed a fourth time the public records information, and a Sky One tradeline showing a past due amount.  He also indicated that his subsequent reports have noted that Plaintiff Bey indicated he had lived in Chicago since 2008.  He demanded a correction to this notation and asked that the notation be corrected to show that he has lived in California since 2008.

89.     Defendants updated the SkyOne account to reflect a zero balance, but the eviction record remained in his file.

90.     Plaintiff Bey disputed each of the inaccurate items of information directly with Defendants.

91.     Plaintiff Bey also demanded a copy of his  file disclosure on or about February 26, 2019 and March 5, 2019.  Defendants failed to provide him with his file.

92.     As a result of Defendants' conduct, Plaintiff Bey has suffered damages in the form of denial of a rental opportunity, harm to reputation, denial of valuable statutorily-mandated disclosure of information, time spent resolving the problem, and emotional distress.

93.     At all times pertinent hereto, Defendants' conduct was a result of its deliberate

policies and practices, was willful, and carried out in reckless disregard for consumers' rights as set forth under sections 1681e(b), 1681(i) and 1681g(a) of the FCRA, and further assumed an unjustifiably high risk of harm.

## V.   CLASS ACTION ALLEGATIONS

94.    Plaintiffs bring this action on behalf of the following Class for Defendants' violations of FCRA section 1681g:

> For the period beginning five (5) years prior to the filing of this Complaint and continuing through the date of judgment, all natural persons with an address in the United States and its Territories who made a request to Defendants which constituted or which Defendants treated as a request for a file disclosure, and to whom Defendants sent a document which did not include all of the information Defendants maintained about the requesting consumer, including the private vendor source(s) from which public record information in the file was obtained.

95.    The members of the Class are so numerous that joinder of all members is impracticable. Although the precise number of Class members is known only to Defendants, Plaintiffs aver upon information and belief that the members of the Class number in the thousands. Defendants sell public record information to thousands of landlords and rental property agents throughout the country, and their reports to such businesses are standardized, form documents, produced by the same practices and procedures applicable to all subjects of the reports.

96.    There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members. The principal question is whether Defendants violated the FCRA by failing to disclose the names and contact information of its public record vendor source(s).

97.    Plaintiffs' claims are typical of the claims of the members of the Class, which arise from the same operative facts and are based on the same legal theories.

98.    Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiffs are committed to vigorously litigating this matter and have retained counsel

experienced in handling consumer class actions. Neither Plaintiffs nor their counsel have any interests which might cause them not to vigorously pursue this claim.

99.     This action should be maintained as a class action because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing the Class, as well as a risk of adjudications with respect to individual members which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

100.     Whether Defendants violated the FCRA can be determined by examination of Defendants' policies and conduct and a ministerial inspection of Defendants' business records.

101.     A class action is a superior method for the fair and efficient adjudication of this controversy. The interest of Class members in individually controlling the prosecution of separate claims against Defendants is slight because the maximum statutory damages are limited to between $100.00 and $1,000.00 under the FCRA. Management of the Class's claims is likely to present significantly fewer difficulties than those presented in many individual claims. The identities of the members of the Class may be derived from Defendants' records.

## VI.   CLAIMS *for* RELIEF

### COUNT I – VIOLATION *of* FCRA SECTION 1681g(a)(2)
#### *Class Claim*

102.     Plaintiffs incorporates the foregoing paragraphs as though the same were set forth at length herein.

103.     Pursuant to sections 1681n and 1681o of the FCRA, Defendant is liable to the Plaintiffs and the Class for negligently and willfully failing to provide a complete copy of all of

the information in consumers' files upon request, including the source(s) of the information, in violation of FCRA section 1681g(a)(2).

**COUNT II – VIOLATION *of* FCRA SECTION 1681e(b)**
***Individual Claim – Plaintiff Kelly***

104.    Plaintiff Kelly incorporates the foregoing as though the same were set forth at length herein.

105.    Pursuant to 15 U.S.C. §§ 1681n and 1681o, Defendants are liable to Plaintiff Kelly for negligently and willfully failing to follow reasonable procedures to assure the maximum possible accuracy of the information it sold about him, in violation of FCRA section 1681e(b).

**COUNT III – VIOLATION *of* FCRA SECTION 1681i**
***Individual Claim – Plaintiff Kelly***

106.    Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

107.    Pursuant to 15 U.S.C. §§ 1681n and 1681o, Defendant is liable to Plaintiff Kelly for negligently and willfully failing to conduct a reasonable reinvestigation of the criminal record information Plaintiff disputed, in violation of FCRA section 1681i.

**COUNT IV – VIOLATION *of* FCRA SECTION 1681e(b)**
***Individual Claim – Plaintiff Bey***

108.    Plaintiff Bey incorporates the foregoing as though the same were set forth at length herein.

109.    Pursuant to 15 U.S.C. §§ 1681n and 1681o, Defendants are liable to Plaintiff Bey for negligently and willfully failing to follow reasonable procedures to assure the maximum possible accuracy of the information it sold about him, in violation of FCRA section 1681e(b).

**COUNT V – VIOLATION *of* FCRA SECTION 1681i**
***Individual Claim – Plaintiff Kelly***

110.    Plaintiff incorporates the foregoing paragraphs as though the same were set forth at

length herein.

111.    Pursuant to 15 U.S.C. §§ 1681n and 1681o, Defendant is liable to Plaintiff Kelly for negligently and willfully failing to conduct a reasonable reinvestigation of the eviction record information Plaintiff disputed, in violation of FCRA section 1681i.

## VII.    PRAYER *for* RELIEF

WHEREFORE, with respect to Plaintiffs' Counts I, II, III, IV, V above, Plaintiffs pray this Honorable Court enter an order granting the following relief:

A.    certifying the proposed Class under Federal Rule of Procedure 23 and appointing Plaintiffs and their counsel to represent the Class;

B.    declaring that Defendants' actions as described above are in violation of the FCRA;

C.    awarding actual damages pursuant to 15 U.S.C. § 1681o(a);

D.    awarding statutory damages in the amount of not less than $100 and not more than $1,000 per Class member pursuant to 15 U.S.C. § 1681n(a);

E.    awarding punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

F.    awarding costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n and 1681o;

G.    and granting such other and further relief as may be just and proper.

## VIII.   JURY TRIAL DEMAND

112.    Plaintiffs demand trial by jury on all issues so triable.

Dated: April 19, 2019

Respectfully submitted,

KEVIN JOSEPH KELLY and KARRIEM BEY,
*on behalf of themselves and all others similarly
situated.*

By:      */s/John Soumilas*
         James A. Francis
         John Soumilas
         Lauren KW Brennan
         FRANCIS & MAILMAN, P.C.
         1600 Market Street, 25th Floor
         Philadelphia, PA 19103
         T: (215) 735-8600
         F: (215) 940-8000
         jfrancis@consumerlawfirm.com
         jsoumilas@consumerlawfirm.com
         lbrennan@consumerlawfirm.com

         Stephanie R. Tatar, Esq. (SBN: 237792)
         TATAR LAW FIRM, APC
         3500 West Olive Ave., Suite 300
         Burbank, CA 91505
         Tel: (323) 744-1146
         Fax: (888) 778-5695
         E-mail: Stephanie@thetatarlawfirm.com

         *Attorneys for Plaintiffs*