IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEVIN JOSEPH KELLY, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>REALPAGE, INC. d/b/a On-Site, et al.,<br><br>*Defendants.* | Case No. 2:19-cv-01706-JDW |

**MEMORANDUM**

Sometimes, despite its best intentions, Congress writes a statute that is not clear. When it does, those subject to the statute have to do their best to comply while they wait for clarity from Congress, regulators, or the courts. The question before the Court is when a private party's interpretation of a statute becomes so unreasonable that it constitutes a knowing violation of the statute. While there might not be hard-and-fast rules to answer that question, the facts of this case are not subject to dispute: RealPage, Inc. and its subsidiary RP On-Site LLC did not knowingly violate the Fair Credit Reporting Act. RealPage adopted an interpretation of the statute with which Kevin Kelly and Karriem Bey disagree and that is at odds with a settlement in a separate case. But it is an interpretation that is at least consistent with the statutory language. Because the facts are not in dispute, and because the inquiry is an objective one, rather than an inquiry into RealPage's subjective views, the Court will grant RealPage's motion for partial summary judgment as to Plaintiffs' claims of a willful violation of the FCRA.

I.      FACTUAL BACKGROUND

   A.      RealPage

RealPage is a consumer reporting agency ("CRA") that operates tenant screening businesses, including RP On-Site LLC. When a landlord requests a report from RealPage, RealPage provides a screening report, which is a type of "consumer report" under the FCRA. *See* 15 U.S.C. § 1681a(d). Landlords and property managers use the tenant screening reports to determine whether they should approve or decline prospective tenants' lease applications. RealPage creates these reports by obtaining from private vendors, such as LexisNexis and Hygenics, public record information about issues such as criminal records and evictions. It then assembles that information and sells it to landlords and property managers.

Messrs. Kelly's and Bey's prospective landlords obtained reports from RealPage when each of them applied to lease an apartment. Because RealPage's reports contained incorrect information, Messrs. Kelly and Bey requested a copy of their respective files from RealPage. RealPage's disclosure identified sources (i.e. the court system) for public records in each file, but it did not identify the third-party vendors that obtained those records.

   B.      Section 1681g(a)(2) And Prior Litigation

Section 1681g(a) requires CRAs to disclose to consumers all information in the consumer's file and the sources of that information. *See* 15 U.S.C. § 1681g(a). In March 2015, RealPage was sued in a class action for violating section 1681g(a). *See Stokes v.*

2

*RealPage, Inc.*, No. 2:15-cv-01520 (E.D. Pa.) and *Jenkins v. RealPage, Inc.*, Case No. 15-cv-3894 (E.D. Pa.). The plaintiffs in *Stokes* and *Jenkins* alleged that RealPage violated the FCRA by failing to provide the third-party vendor source information to its consumers—the same conduct at issue in this case. *See id.* Those cases settled. As part of the settlement agreement, RealPage committed to disclosing to consumers all information in their files, including the vendor that supplied the information. (*See* Settlement Agreement and Release, ECF 51-2, *Stokes v. RealPage, Inc.*, No. 2:15-cv-01520 (E.D. Pa.).) The court entered an injunction requiring RealPage to so.

C.     **Procedural History**

Messrs. Kelly and Bey filed this action in April 2019. In their Complaint, they claim that when RealPage failed to disclose the vendor source information for the public records RealPage attributed to them, it violated the FCRA. They asserted a class-wide claim for violation of Section 1681g(a)(2). They each also assert individual claims for violations of Section 1681e(b) and Section 1681i. On July 10, 2020, Messrs. Kelly and Bey filed a Motion to Certify Class. The Court denied that motion. (*See* ECF Nos. 67 and 68.) Prior to the close of discovery, RealPage filed a Motion for Partial Summary Judgment. The Court denied that Motion, without prejudice, due to Plaintiffs' contention that under Fed. R. Civ. P. 56(d) more discovery was necessary. (*See* ECF No. 65.) After the close of discovery, on January 8, 2021, RealPage filed this motion for partial summary judgment addressing Plaintiffs' claim of a willful violation under Section 1681g(a)2. RealPage argues that summary judgment is warranted because it adopted a reasonable reading of

3

the statute and thus did not act willfully by failing to disclose third-party vendor source information. Messrs. Kelly and Bey oppose summary judgment arguing, among other things, that in light of previous litigation, RealPage acted knowingly.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quotations omitted). In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted). However, "[t]he non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citation omitted).

III. ANALYSIS

A. The FCRA

The FCRA requires that "[e]very consumer reporting agency shall, upon request, . . . clearly and accurately disclose to the consumer: (1) [a]ll information in the consumer's file at the time of the request . . .; and (2) [t]he sources of the information . . . ." 15 U.S.C. § 1681g(a). The statute imposes liability on "[a]ny person who . . . fails to comply with any requirement imposed" by this statute. *Id.* § 1681n. A CRA that negligently fails to comply is liable to the affected consumers for actual damages. *Id.* § 1681o(a)(1). If non-compliance is willful, a CRA is liable to the affected consumer for actual damages or statutory damages ranging from $100 to $1,000, as well as punitive damages and attorney's fees. *Id.* § 1681n(a). To prove a willful FCRA violation, a consumer must show that the CRA either knowingly or recklessly violated the act's requirements. *See Safeco Insurance Company of America v. Burr*, 551 U.S. 47, 57 (2007). Thus, there are two independent bases for establishing a willful violation of the FCRA: recklessness and knowledge. *Id.*

"[A] company. . . does not act reckless[ly]. . . unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69. Accordingly, "[a] company cannot be said to have willfully violated FCRA if the company acted on a reasonable interpretation of FCRA's coverage." *Fuges v. Sw. Fin. Servs., Ltd.*, 707 F.3d 241, 248 (3d Cir. 2012) (interpreting

5

*Safeco).* "[E]ven a company's erroneous reading of the FCRA does not constitute a reckless, and therefore willful, violation of the Act unless the company's reading is 'objectively unreasonable.'" *Fuges v. Sw. Fin. Servs., Ltd.*, No. 2:09-CV-00699, 2011 WL 5865961, at *4 (E.D. Pa. Nov. 22, 2011), *aff'd,* 707 F.3d 241 (3d Cir. 2012) (citing *Safeco*).

Likewise, a knowing violation of the FCRA does not reach "those claims made based on a reasonable but erroneous interpretation of a defendant's legal obligations." *United States ex rel. Purcell v. MWI Corp.*, 807 F.3d 281, 287–88 (D.C. Cir. 2015) (defining "knowingly" in a similar statute); *see also United States v. Allergan, Inc.*, 746 F. App'x 101, 106 (3d Cir. 2018) (adopting *Purcell*); *Long v. Tommy Hilfiger U.S.A., Inc.*, 671 F.3d 371, 374–75 (3d Cir. 2012) (declining discovery to establish defendant's subjective knowledge because "actual knowledge or intent as to FACTA's requirements is immaterial to the objective reasonableness analysis"). "Evidence of [defendant's] subjective bad faith or intent is irrelevant when there is an objectively reasonable interpretation of the statute that would allow the conduct in question." *Long*, 671 F. 3d at 377

Courts consider three factors in analyzing whether a company's interpretation of the FCRA is "objectively unreasonable:" (1) the clarity of the statutory text as it relates to offending conduct, where "less-than-pellucid" text favors the finding that the company acted reasonably; (2) whether the company's proposed interpretation has "a foundation in the statutory text;" and (3) whether the company had the benefit of judicial and/or agency guidance. *Safeco*, 551 U.S. at 69-70; *see also Fuges*, 707 F.3d at 251.

In *Safeco*, for example, "[the] dearth of guidance and less-than-pellucid statutory text" persuaded the Supreme Court to conclude that Safeco's reading was not objectively unreasonable and so fell short of raising the unjustifiably high risk of violating the statute necessary for reckless liability." *Safeco*, 551 U.S. at 70. The Third Circuit has, in turn, consistently applied these principles to dismiss claims of willful FCRA violations based on disputed statutory language when the defendant's position has "some foundation in the text." *See e.g., Long v. Tommy Hilfiger U.S.A., Inc.*, 671 F.3d 371, 377 (3d Cir. 2012).

**B.     RealPage's Liability**

RealPage did not act unreasonably by disclosing only the original sources of the reported information as opposed to the identity of third-party vendors that gathered the information on RealPage's behalf because that is a plausible reading of the statute. The FCRA does not define the term "source." Because Congress enacted the FCRA in 1970, the Court must consider the ordinary meaning of the word "source" as it existed at that time. In 1970, the word "source" meant "a thing that originates; . . . an origin[, or a] place where something is found or whence it is taken or derived." Black's Law Dictionary 1568 (Rev. 4th. ed. 1968). Based on that definition, it was not unreasonable for RealPage to conclude that the "source" of consumer's record is the court where the record originated and resides. Because that is a reasonable interpretation of the statute, the Court does not need to determine whether it is the correct interpretation and it will decline to do so.

Section 1681c(a)(2)'s use of the plural "sources" does not alter the Court's analysis. Congress's use of the plural could be read to include multiple sources for a single

7

piece of information (such as the vendor and ultimate source), but it could also contemplate disparate sources for different pieces of information (such as different courts that entered judgments in discrete cases). *See Dennis v. Trans Union, LLC*, No. CIV.A. 14-2865, 2014 WL 5325231, at *6, n.2 (E.D. Pa. Oct. 20, 2014).) Therefore, the statute's use of the plural word "sources" does not foreclose RealPage's interpretation that it must disclose "all sources when a file contains multiple items of information from [different] originating entities." (ECF No. 81 at 3.) RealPage's reading of the statute is not unreasonable.

There is no court of appeals or any other regulatory guidance that defines the term "source" or requires RealPage to disclose third-party vendor information, and that absence reiterates the reasonableness of RealPage's interpretation. Messrs. Kelly and Bey's citation to *Dennis* is unpersuasive. *Dennis* is a district court decision decided on a motion to dismiss. It is not a controlling decision with a definitive interpretation of the FCRA. Certainly, the decision in *Dennis* put RealPage on notice that it ran a risk by not disclosing vendor source information but it did not go so far as to foreclose RealPage from having an alternative interpretation of the statute. Messrs. Kelly and Bey's reference to two FTC statements is likewise unpersuasive as neither is on point. The first contemplates scenarios where the CRA obtains information from another CRA. And the second recites statutory language.

RealPage's settlement in *Stokes* and *Jenkins* also does not demonstrate unreasonableness. The settlement states that RealPage did not admit liability, and the

court in those cases did not make a finding of liability. The settlement agreement and injunction from those cases might have imposed legal obligations that RealPage violated, but they did not provide a definitive interpretation of the FCRA. To the contrary, they demonstrate only that RealPage agreed to behave a certain way to put an end to litigation. It is possible that RealPage agreed to more disclosure than the statute required just to avoid potential liability. If it violated those obligations, then it might face a consequence in the form of a contempt sanction. The Court is not in a position to make that determination. But the mere fact that RealPage committed to certain conduct in a settlement agreement does not change the reasonableness of its interpretation of the FCRA because it does not account for the possibility of some daylight between the FCRA's requirements and the settlement agreement's requirements.

To the extent that Messrs. Kelly and Bey argue that the settlement agreement demonstrates that RealPage did not actually adopt the interpretation of the FCRA it now embraces, the Supreme Court has foreclosed that argument. "[W]here . . . the statutory text and relevant court and agency guidance allow for more than one reasonable interpretation, it would defy history and current thinking to treat a defendant who merely adopts one such interpretation as a knowing or reckless violator [of the FCRA]. *Safeco*, 551 U.S. at 70 n. 20.; *see also Shimon v. Equifax Info. Servs. LLC*, 994 F.3d 88, 94 (2d Cir. 2021)(rejecting a similar argument). Because RealPage points to a reasonable interpretation of the statute that supports its conduct, it does not need to prove its subjective intent to adopt that interpretation. To be sure, there are scenarios where CRAs

could knowingly violate the FCRA by, for example, omitting or falsifying source information for certain types of customer information. And in those cases, willfulness might be a question for the jury. But this is not such a case, and summary judgment is appropriate.

IV. CONCLUSION

The Court doesn't know the "correct" definition of "source" under the FCRA. But luckily, it doesn't need to decide that today. Instead, it needs to determine if RealPage's reading of the word "source" was "objectively unreasonable." It was not. And for that reason, the Court will grant RealPage's summary judgment motion. An appropriate Order follows.

BY THE COURT:

*/s/ Joshua D. Wolson*
HON. JOSHUA D. WOLSON
United States District Judge

May 14, 2021